## No. 9434.

### ADOLPHE SCHREIBER VS. BOARD OF ASSESSORS.

The shares of stock of the New Orleans Cotton Exchange have a money-value independent of and in addition to the privilege of membership which the ownership of them may secure to the holder. They may be owned and held by a person not a member of the Exchange, and when so held are received as collateral or as pledges by Banks, and other money-lending institutions. They are bought and sold as other stocks are and are therefore included in the taxable property of the holder and owner of them as being a thing possessing money-value.

The law authorizing subsequent assessment of property which had been omitted from the rolls in past years applies only to property which had been unlawfully and erroneously omitted, and not to property which was not assessable under the law in force in those years. The assessment of property in 1882 was governed by Act 77 of 1880; and the provisions of Act 96 of 1882, so far as assessments were concerned, applied only to future years.

This Court having held that the stock of the Cotton Exchange was not assessable under the Act of 1880, it follows that it was lawfully omitted from the rolls of 1882 and cannot by subsequent proceedings be assessed for that year.

APPEAL from the Civil District Court for the Parish of Orleans. Tissot, J.

*Henry C. Miller* and *Bayne & Denègre* for Plaintiff and Appellee.

*Wynne Rogers* for Defendant and Appellant.

The opinion of the Court was delivered by

MANNING, J. The plaintiff seeks by this action to compel the defendant to strike from the rolls for 1882, 1883, and 1884 an assessment

of one share of stock of the New Orleans Cotton Exchange made against him as owner of it, on the ground that there is no law providing for the assessment or taxation of such shares.

In 1882 the Board of Assessors assessed against the Cotton Exchange all the shares of its stock, and we held that this was without warrant of law because the Act of 1880 had in contemplation the assessment and taxation of stock in money-making and dividend-paying corporations alone, and as it appeared that the Cotton Exchange was in neither of these categories, we annulled the assessment. N. O. Cotton Ex. vs. Bd. of Assessors, 35 Ann. 1154.

The assessment in that case was made under sec. 48 of the Act of 1880, Sess. Acts, p. 102, and the plaintiff argues that the assessment in this case, having been made under sec. 28 of the Act of 1882, Sess. Acts p. 128, which is identical with the other, the decision then made applies here and a similar decree must be entered. We do not think so.

These two sections of the two Acts are identical but there are essential differences in other sections. The Act of 1882 is more comprehensive than its predecessor and the assessment now made is based upon other Sections than that cited. The first Section of the Act of 1880 merely directs that taxes shall be levied upon the assessed valuation of all property within the State except such as is expressly exempted. The corresponding section of the Act of 1882 repeats this language and then proceeds to declare that " the term property as herein used means and includes all movable property, all personal property * * all shares of stock and all other things whatever possessing any money-value," and near the close of the Act there is a supplemental definition of various terms used therein, i. e. " the phrase personal property or movable property shall be held to mean and include all things other than real estate which have any pecuniary value, and moneys, credits, investment in bonds, stocks, shares in joint-stock companies or otherwise." Sec. 88.

It is not claimed that the Cotton Exchange is a joint-stock company nor is it, since in the suit against it we found that " it pays no dividends, lends no money, transacts no business of its own from which pecuniary profits result to itself or to its members," but it is manifest that shares in other companies are equally declared included in the phrases movable or personal property, and even if this were not broad enough, the term property alone is expressly defined as meaning inter alios all shares of stock and whatever possesses a money-value.

That the shares of stock of the Cotton Exchange have a money-value is apparent from the testimony of its President and Secretary.

Three or four years ago a share was worth forty-seven hundred dollars. It now ranges from one thousand to fourteen hundred dollars. Banks and other money-lending institutions receive the stock of the Exchange as collateral for loans and as pledges. It is quoted among other stocks and that too upon the boards of the Exchange itself. It is bought and sold as other stocks are and is sometimes bought as an investment. Any one may buy and hold it. No one can be a member of the Exchange unless he owns a share, and therefore it has a value outside of and beyond and in addition to its general market-value, as its ownership carries with it a personal privilege. But the ownership of a share does not entitle one to membership. There are seventy or eighty shares held by persons who are not members and they acquired them by purchase. The value of shares therefore does not depend solely upon the privilege or hope of being elected a member. They are bought as other stock is for speculation as well as investment. They have all the indicia of other securities, such as bank-stock, insurance-stock, etc. When the owner dies, they go among other assets into his succession. Like other stocks, their value fluctuates with the demand for them. If seventy or eighty persons, not now members of the Exchange and not holding any stock, should conceive that their business would be greatly promoted by membership or that other advantages would accrue to them thereby, and they should seek to buy shares, the seventy or eighty holders who are not members would find an instant demand for their shares and an appreciation of their market value would follow.

If these shares of stock be not taxable, it would be difficult to find any securities that are. They fall within the definition of property as including all shares of stock and of course within the broader designation of whatever has a money value.

Besides the objections to the assessment of 1884 there is an additional one to those of 1882 and 1883. These shares of stock were not assessed on the rolls for those years but have been placed upon supplemental rolls. This is expressly authorized by the Act of 1882 when it empowers the assessors to assess any property that may have been omitted. Sess. Acts, p. 122, sec. 11.

The lower court relieved the plaintiff from the assessment of his share of stock which we think is error. Therefore

It is ordered and decreed that the judgment of the lower court is reversed, and that the plaintiff's demand be dismissed and the defendant have and recover of him judgment rejecting the same and for costs.

Schreiber vs. Board of Assessors.

### DISSENTING OPINION.

POCHÉ, J.   In the case of the Cotton Exchange vs. Board of Assessors, 35 Ann. 1154, we annulled the assessment of shares in the Cotton Exchange, on the distinct ground that there was no law providing for the assessment of that kind of property, or for the collection of taxes levied thereon..

In that proceeding the attempt was made to assess the shares against the corporation, and to collect the tax from that body.

In this case the assessment is made directly against the share-holder, but there is no other difference, and the right to tax the shares at all is yet the vital question at issue.

In the Cotton Exchange case, we said emphatically: "However clear may be the power or even the duty of the legislature to tax any particular species of property, the burden cannot be imposed until that power is exercised."

The question presented for solution is therefore to ascertain whether since the date of that decision, the legislature has sought to exercise or vivify that dormant power, in order to reach the shares of the Cotton Exchange.

The only legislation on the subject matter is to be found in Act 96 of 1882, and I have sought in vain for any language in that act which can in the least justify the conclusion that the law-maker intended therein or thereby to affect the taxable status of these shares of stock.

Section 28 of 1882 is a mere reproduction of section 48 of 1880, and both manifestly refer exclusively to money-making or dividend-paying corporations, and we have already adjudicated that the Cotton Exchange did not partake of either character.

Any language in section 1 of the act of 1882, which is general and directory in its character, tending to include this kind of property, must be controlled by and construed with reference to section 28, which is special and pointed in its provisions, and is therefore the law of the case.   That rule of construction is too well settled by jurisprudence to admit of discussion at this day.

In my opinion, our statutes are to-day as barren of authority to tax these shares of stock as they were at the time that our Cotton Exchange decision was rendered, and I find no reason to justify a different conclusion in the instant case.

I therefore respectfully dissent from the opinion and decree of the majority in this case.

ON APPLICATION FOR REHEARING.

FENNER, J.   Under this application, we have given our closest attention to the points and arguments presented, without being able to discover any principle under which we could hold that the shares of stock in the New Orleans Cotton Exchange are not property.   Such a share is a distinct, concrete incorporeal right, a specific thing, which the proprietor holds and owns to the exclusion of all others; which he has the absolute right to dispose of; which is bought and sold in public market; which is heritable; which may be validly pledged; which is liable for his debts; and which thus possesses every element of property.

It has no connection, direct or indirect, with any of the classes of property which are mentioned in the Constitution as exempt from taxation.

We adhere to our conclusion that the broad language of Act 96 of 1882, includes such property and sufficiently evinces the legislative intent to subject it to taxation.   Under that act there existed no legal obstacle to the assessment and taxation of such property.

There are two points, however, which were not called to our attention in the original argument and which, in a case of this character, we are disposed to make an exception to our general rule not to consider on rehearing, points not made on original hearing.

1st.   It is objected that the assessment for 1884 is illegal, because not sufficiently specific.   The terms of the rolls are: "Assessed value of share $1000 gross, deductions to be made."   This obviously means deduction of the proportionate value of the real estate of the corporation otherwise taxed.   Such deduction must necessarily be made and our own records suggest the reason why it was not made, viz: the contest existing, at the time, relative to the valuation of the real estate, which was decided by us and is reported in 37th Annual, p.——— As the objection raises no point of practical consequence, in view of the fact that, if this assessment were annulled, it would be again made with the deductions which must now be allowed, we see no necessity of subjecting the State and city to such useless expense and delay.

2nd.   The next point is more vital affecting the assessment for 1882. In the case of the Cotton Exchange vs. Board of Assessors, 35 Ann. 1158, the opinion rendered by the majority of the court unmistakably decided, (quoting for brevity from the syllabus) that "Act No. 77 of 1880, had in contemplation the assessment and taxation of shares in money-making and dividend-paying corporations, and was not designed to embrace corporations like the Cotton Exchange."

But the Act of 1880 was the only law under which assessments of property in 1882, could be made. A review of the Act 99 of 1882 will show that it was passed only in July of that year, after the assessment rolls for the year had been made, and that its provisions with regard to the assessment of property only applied to succeeding years. Hence, it follows that under the law regulating assessments for the year 1882, as interpreted by us, the shares of stock in question were properly and legally omitted from the rolls.

Section 11 of the Act of 1882, authorizing subsequent assessment of property which had been omitted from the rolls in past years, obviously applies only to property which had been erroneously and unlawfully omitted and not to that which was not assessable under the law in force in those years. Hence that section does not authorize the assessment of these shares for the year 1882, because they were not then assessable under the law in force at the time.

This is so clear that the correction of our former decree may be made without the necessity of awaiting a rehearing.

For the purpose of making the correction, rehearing is granted, and in disposition thereof, it is now ordered and decreed, that our former decree herein be so amended as to read as follows : that the judgment appealed from be affirmed in so far as it cancels and annuls the assessment for the year 1882 ; and that, in other respects, it be reversed and that plaintiff's demand, with reference to the assessments for the years 1883 and 1884, be dismissed, plaintiff to pay costs of this appeal, and defendant to pay costs in the court below.

## DISSENTING OPINION.

POCHÉ, J. Without waiver of any of my views as expressed in my dissenting opinion herein, I concur in that part of the present decree which releases the shares of the Cotton Exchange from taxation for the year 1882.

But I dissent from the opinion and decree of the majority in all other particulars. A second examination of the case has confirmed my opinion that there is now, no more than there was in 1882, no law in Louisiana under which these shares of the Cotton Exchange could be legally assessed and taxed.

Dealing with a kindred subject in the case of Forman vs. Board, 35 Ann. 825, this Court said : "Taxation is exclusively a legislative power, and, however clear the power or even the duty of the legislature to levy taxes on any particular species of property, until that

power has been exerted, the burden cannot be imposed." * * * "Such taxation is of a peculiar character, requiring special provisions for defining and ascertaining the income to be taxed, and cannot be considered as falling within the scope of general provisions touching the assessment and taxing of property."

I respectfully submit that the language used in that case should apply to the present controversy with irresistible force, and it should have led to a similar conclusion to that reached in the decision quoted from.

I am clearly of the opinion that a rehearing should have been granted in this case.